ALL AMERICAN CAB COMPANY and
Greater Knoxville Cab Drivers
Association

v.

METROPOLITAN KNOXVILLE AIR-
PORT AUTHORITY and Creative
International Management, Inc.

Civ. No. 3–82–446.

United States District Court,
E. D. Tennessee, N. D.

Aug. 31, 1982.

Helen DeHaven, Knoxville, Tenn., for plaintiffs.

Frank Erickson, Knoxville, Tenn., for Metropolitan.

David Black, Maryville, Tenn., for Creative.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is an action for violations of sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2. Plaintiffs are All-American Cab Company and its employees. The employees are represented by the defendant, Greater Knoxville Cab Drivers Association. Plaintiffs allege that defendants entered into contracts that restrain trade in the provision of ground transportation services from McGhee-Tyson Airport. The airport, located in Blount County, Tennessee serves the Knoxville metropolitan area. Plaintiffs also allege that defendant, Creative International Management, Inc. (Creative), has monopolized or attempted to monopolize the market for ground transportation at the airport. The case is before the Court on defendants' motions to dismiss. The Court previously denied plaintiffs' motion for a preliminary injunction.

The contracts in dispute provide that Creative has the exclusive right to operate a limousine service at the airport. The contracts also designate Creative as the exclusive dispatcher of airport ground transportation services. Creative therefore controls the dispatching of limousines and taxicabs to airport customers. Plaintiffs allege that Creative is using its dispatching power to discriminate against taxicab services and to monopolize ground transportation.

The contracts that are the focus of this suit have also been the subject of litigation in the state courts of Tennessee. *See Creative International Management, Inc. v. Metropolitan Knoxville Airport Authority,* No. 7292 (Blount Co. Cir. Ct., filed March 25, 1982). In an action brought by Creative, the state court enjoined the Airport Authority to comply with the 1979 contracts. The court ordered the Authority to prohibit taxicab interference with Creative's exclusive dispatch service. The court specifically found that

> In order for an operator of an airport limousine service to make a reasonable profit such a business must be an exclusive service... The plaintiff company was not profitable because the City permitted and even encouraged the cab companies to seek and obtain business at the terminal building, destroying the exclusivity of the contracts.

*Id.* Although All American Cab Co. was originally a party to the state suit, its case was severed before trial. According to the parties, the state court refused a subsequent request to intervene. It does not appear that any antitrust defense was raised in the state court proceeding. The case is now on appeal.

This Court is hesitant to interfere with disputes, such as the instant contracts, that are also the subject of state proceedings. "Special circumstances" must exist however, before a federal court should abstain from deciding a federal question pending the outcome of state litigation. *See Baggett v. Bullitt,* 377 U.S. 360, 375, 84 S.Ct. 1316, 1324, 12 L.Ed.2d 377 (1964). The uncertainty of a controlling issue of state law, the probability that the state decision will eliminate all issues related to the federal claim, the delay caused by abstention, and the importance of the federal issue involved are factors that must be weighed in deciding if special circumstances exist. *Id.* at 375–379, 84 S.Ct. at 1324–1326. We must conclude that abstention is neither necessary nor appropriate in this case. It appears unlikely that a decision on issues of state law will eliminate our need to decide the antitrust claim raised by plaintiffs.

Plaintiffs are not parties to the state action on appeal and might be prejudiced by delay pending a protracted appeal. Accordingly, we address defendants' motions to dismiss.

■ In its motion, the Airport Authority relies on the doctrine of sovereign immunity to justify and protect its conduct in this case. A state exercising its sovereign powers may impose certain anti-competitive restraints. *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). It may therefore be exempt from Sherman Act liability. *Id.* State instrumentalities, however, do not enjoy such far-reaching immunity. *See City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978); *Community Communications Co. v. City of Boulder,* —— U.S. ——, 102 S.Ct. 835, 841, 70 L.Ed.2d 810 (1982). An instrumentality is only exempt if "it constitutes the action of the state . . . itself in its sovereign capacity" or if "it constitutes municipal action in furtherance or implementation of clearly articulated and affirmatively expressed state policy." *Community Communications Co.,* 102 S.Ct. at 941.

■ The Metropolitan Knoxville Airport Authority derives its powers from the state of Tennessee. Tenn.Code Ann. § 42–4–102 declares the Authority's purpose:

It is hereby declared that airport authorities created pursuant to this chapter shall be public and governmental bodies acting as agencies and instrumentalities of the creating and participating municipalities; and that the acquisition, operating and financing of airports and related facilities by such airport authorities is hereby declared to be for a public and governmental purpose and a matter of public necessity. The property and revenues of the authority or any interest therein shall be exempt from all state, county and municipal taxation.

Tenn.Code Ann. § 42–4–107(16) grants the Airport Authority all powers necessary to accomplish its purposes including the power,

To contract with persons or corporations to provide goods and services for the use

of the employees and passengers of the carriers, . . . necessary and incidental to the operation of the airport; . . .

Prior to *City of Lafayette* and *Community Communications,* the Sixth Circuit reviewed the immunity of a Kentucky airport board in *Padgett v. Louisville and Jefferson County Air Board,* 492 F.2d 1258 (6th Cir. 1974). The Court examined a Kentucky statute authorizing air boards. The statute declared that Kentucky air board powers were exercised for a public purpose and their actions were public, governmental, and municipal functions. *Id.* at 1260. The Sixth Circuit did not hesitate to find that the air board's regulation of taxicab services was a valid governmental function to which the antitrust laws did not apply. *Id.*

The analysis of the Tenth Circuit in the recent case of *Pueblo Aircraft Services, Inc. v. City of Pueblo* is consistent with *Padgett.* 679 F.2d 805 (10th Cir. 1982). The focus in *Pueblo* was on the public nature of the airport and need for reliable airport related services. Like the Pueblo Memorial Airport, the McGhee Tyson Airport is operated for the benefit of the general public and not for the particular advantage of Knoxville residents. We therefore conclude that the Airport Authority and its contract for the provision of a dispatching service are exempt from antitrust scrutiny. Likewise, Creative's actions pursuant to its authority under the dispatcher agreement with the Airport Authority bar any action against it.

■ Although our ruling on the issue of immunity does not require that we address the merits of plaintiffs' claim, we will do so in this case. Plaintiffs allege defendants' activities have a direct and substantial impact on interstate commerce, as required by the Sherman Act. *See Swift and Co. v. United States,* 196 U.S. 375, 397, 25 S.Ct. 276, 280, 49 L.Ed. 518 (1905). They base this connection on the fact that many of the airport passengers who use ground transportation services are completing interstate journeys. We cannot accept this explanation as a sufficient nexus to meet the requirements of the Sherman Act. *See Unit-*

ed States v. Yellow Cab, 332 U.S. 218, 231–234, 67 S.Ct. 1560, 1567–1568, 91 L.Ed. 2010 (1947). In *Yellow Cab,* the United States sought to restrain a monopoly of taxicab services conveying railroad passengers to and from railway stations. The Supreme Court held:

> [W]hen local taxicabs merely convey interstate train passengers between their homes and the railroad station in the normal course of their independent local service, that service is not an integral part of interstate transportation. And a restraint on or monopoly of that general local service without more is not proscribed by the Sherman Act.

*Id.* at 233, 67 S.Ct. at 1568. We think that the facts alleged in the instant case are indistinguishable from those in *Yellow Cab.* Plaintiffs have therefore failed to state a claim under the Sherman Act.

For the foregoing reasons, it is ORDERED that defendants' motions to dismiss be, and the same hereby are, granted.

Order Accordingly.